# BERRYMAN v. THE JUDGE OF THE COUNTY COURT OF LAWRENCE.

1. Where there is a *mittimus* showing the commitment of a party, upon a prosecution for bastardy, and subsequently a petition for a *habeas corpus*, and a recognizance executed in due form by the reputed father, a motion to quash the proceedings before the justice will not be sustained by the County Court, on the ground that there is no warrant in the papers, showing the arrest—all the papers reciting that the proceedings before the examining justices were regular. The warrant might be substituted by another conforming to it, as nearly as practicable; or if it was shown that no warrant ever issued, or its production was necessary, the court might protect the party by making a suitable order.

2. Where the verdict affirms that the defendant is the real father of the bastard child of the woman by whom he was charged, it is sufficient; and a judgment thereon, which condemns the defendant to the payment of the sum prescribed by law as a consequence of the paternity, and directs a bond to be executed, with surety, for the annual payment of the sum adjudged, though not entirely formal, will be sustained.

3. A party on whom the paternity of a bastard child is established, by judgment, is liable to pay costs.

Error to the County Court of Lawrence.

It is shown by the record, that this was a proceeding in bastardy, under the statute, against the plaintiff in error, upon the affidavit of Ann Croft, that he was the father of a bastard child with which she was pregnant. Neither the affidavit or warrant under which the arrest was made, are found in the transcript, but the fact above stated is recited in a warrant signed by the examining justices, by which upon a refusal to enter into the usual recognizance, the defendant was committed to jail. The foregoing facts are reiterated in a petition subscribed and sworn to by the defendant, in which he prays the Judge of the County Court of Lawrence to discharge him from custody, and receive the recognizance required by the justices. Again the same facts are reiterated in the recognizance into which the defendant, with his sureties entered.

On the trial, the defendant excepted to the ruling of the court. From the bill of exceptions, it appears that at the term of the County Court to which the proceedings were returnable, the defendant moved to quash the same, because it does not appear that any complaint was made by Ann Croft to one or more justices of the peace as required by the statute; or that any process ever issued requiring his arrest. Nor does it appear that Ann Croft was ever examined before any justice of the peace in the presence of the defendant touching the charge made against him. Which motion was overruled by the court.

An issue was then made up under the direction of the court, submitting to the jury the inquiry whether the defendant was not the father of a male child of Ann Croft. To which the jury responded that they " do find Alexander Berryman, the real father of said child." *Thereupon,* it was " considered, adjudged and decreed by the court, that the defendant, the said Alexander Berryman, be condemned by the judgment of this court, to pay the sum of fifty dollars a year, for ten years, towards the maintenance and education of the said bastard child of the said Ann Croft; and that the said Alexander Berryman shall give bond and security for the due and faithful payment of said sums of money, yearly, as the statute in such cases made and provided, requires; and that the

said defendant pay the costs of the proceedings in this behalf, and that execution issue," &c.

T. M. Peters, for plaintiff in error, made the following points: 1. The proceeding in bastardy is *quasi* criminal, and must conform strictly to the statute. It does not appear that the mother of the child was a single woman, that any warrant issued, or examination had preliminary to the proceedings in the County Court. [Clay's Dig. 133-4. §§ 1, 2, 3; Bettis v. Taylor, 8 Porter's Rep. 564; Trawick v. Davis, 4 Ala. Rep. 328.] The defendant does not appear to have waived any of the requirements of the statute. 2. A *mittimus* was the first step taken in the case, instead of instituting an inquiry before the justices and allowing the defendant to exculpate himself. To this irregularity the defendant objected as soon as practicable by the motion made to quash. See Trawick v. Davis, *supra*. 3. The inquiry was *ex parte* and the judgment is not adapted to the issue and verdict. [Moody v. Keenan, 7 Porter's Rep. 218.] It does not adjudge that the defendant is the real father of the bastard child. [2 Sidf. Rep. 363; Ld. Raym. Rep. 1198; Doug. Rep. 662; 2 Mass. Rep. 156.] 4. The judgment is for costs —this is not allowable at common law, and they are not given by statute in such cases. [Clay's Dig. 134, § 4; Id. 316.] Besides, the statute prescribes the judgment.

L. P. Walker, for the defendant in error, insisted, that it must be presumed that the examining justices acted according to law—in fact this is conceded in the petition for a *habeas corpus*. It cannot be known whether the reputed father controverted the charge against him before the justices of the peace ; from the record there can be no inference either way. In respect to the other points made for the plaintiff in error, they are fully answered by the case of Austin v. Pickett, Judge, &c., 8 Ala. Rep. . See also, 4 Ala. Rep. 328.

COLLIER, C. J.—The act of 1811, enacts, that when any sigle woman who shall be pregnant or delivered of a child, which by law would be deemed a bastard, shall make

58

complaint, to any one or more justices of the peace for the county where she may be so pregnant, or delivered, as aforesaid, and shall accuse any one of being the father of such child, it shall be the duty of such justice or justices, to issue process to the sheriff, or coroner, or any constable of such county, against the person so accused as aforesaid, and cause him to be brought forthwith before him. *Further*, it is made the duty of the justice, or justices, to examine the female in the presence of the man alledged to be the father of the bastard child, touching the charge against him; and if he, or they, shall be of opinion that sufficient cause appears, it shall be his or their duty, to bind the said person so accused in a bond with sufficient sureties, to appear before the next County Court of the county; and in the meantime to be of good behaviour. [Clay's Dig. 133, 134, §§ 1, 2.]

When the case is returned to the County Court, the question of paternity is to be determined by the court, or to be ascertained by verdict, if the defendant shall demand a jury trial. [C's D. 134, § 8; 4 Ala. R. 328.] No question arises in the present case as to the regularity of the mode in which the case was submitted to the jury. It is admitted by the defendant that the issue was properly framed.

In Trawick v. Davis, *supra*, it was said, that if the proceedings before the justice of the peace, were defective to such an extent as to make them void, a motion to quash should have been submitted to the County Court at the proper time, and came too late after the defendant had appeared, asked and obtained a continuance. We do not desire to be understood, as deciding, in the case referred to, that a motion to quash can be granted for a defect in the warrant issued by the justice, where the defendant appears in court, in obedience to a recognizance regularly taken, and in due form. However the law may be in such a case, we think the motion should not be granted, where, as in the case before us, the *mittimus*, the petition for a *habeas corpus*, and the recognizance all recite that regular proceedings were had before the examining justices. The loss or absence of the warrant certainly should not prejudice either party, and if it could not be found, it might be substituted by another con-

forming as near as practicable to it. Or if the defendant could make it appear that no warrant had ever issued, and that it was necessary to the protection of his rights that it should be produced, the court might in the one case dismiss, and in the other stay proceedings until the warrant or a counterpart was produced. But in the condition of the record, we cannot see that the defendant could have been injured by the absence of the warrant, and his admissions estop him from saying that one never issued, and there is nothing to warrant the inference that it was not entirely formal.

The objections to the verdict and judgment are not well taken. It is explicitly affirmed by the jury, that the defendant is "the real father of said child," viz: of the "son of Ann Croft," who is alledged by the verdict to be a bastard. The judgment does not reiterate *in totidem verbis* the affirmation of the verdict, but it adjudges the defendant to pay the sum prescribed by law, as a consequence of being ascertained to be the father of an illegitimate child; and directs a bond to be executed with surety, for the payment annually of the sum adjudged. Perhaps the judgment may have been more technical, but it is certainly sufficient to conclude the matters in issue.

We cannot doubt the liability of the party to pay costs, on whom the paternity of a bastard child is established by judgment. In all civil actions, the unsuccessful party is entitled to full costs, unless the law otherwise direct. [Clay's D. 316, § 20.] So in *qui tam* actions, or in suits in the nature thereof, the party prevailing in the suit shall be entitled to recover costs as in other actions at law. [Id. 331, § 100.] And in criminal prosecutions, the accused, if convicted, is chargeable with costs. [Id. 442, § 36.] *Again;* the woman making the complaint in a case of bastardy, if she fail to make it good is made liable for costs. [Id. 134, § 5.] Thus leaving it to be inferred, that if the individual charged shall be shown to be the real father, he shall pay all costs.

If the case at bar be neither a civil, criminal, or *qui tam* action, may it not be embraced under the general terms "or suits in the nature" of the latter? We think it perfectly clear, upon the statutes cited, that the defendant was properly charged with costs; and to this may be added that such

has been the invariable practice in such cases, since the passage of the act of 1811. *Contemporanea expositio fortissima est in lege.*

It results from what has been said, that the judgment of the County Court is affirmed.